# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JENNIFER MATSON,

                           Plaintiff,

v.

EDFINANCIAL SERVICES LLC,

                           Defendant.

Case No. 14-CV-1052-JPS

## ORDER

In this civil suit, filed on August 28, 2014, Plaintiff, Jennifer Matson, alleges both negligent and willful violations of the Fair Credit Reporting Act ("FCRA") in violation of 15 U.S.C. § 1681, *et seq.* against Defendant EdFinancial Services LLC ("Edfinancial"). (Docket #1).[1] On June 15, 2015, the plaintiff filed a Motion for Partial Summary Judgment, (Docket #24), and the defendant filed a Motion for Summary Judgment on all claims (Docket #30). The motions are now fully briefed and ready for disposition. As discussed below, the Court will grant the defendant's motion in its entirety and deny the plaintiff's motion.

Before turning to the undisputed facts, the Court must address two matters. First, both parties filed Motions to Restrict (Docket #25, #29). They request to shield certain documents from the public because they contain confidential business information and they have been designated as confidential pursuant to the Court's December 24, 2014 Protective Order (Docket #18). With no objection from either party, the Court will grant the requests to restrict confidential documents. As noted in the Protective Order,

---

[1] On, January 8, 2015, the Court dismissed Defendant Equifax Information Services, LLC, upon a joint stipulation from the parties due to a settlement agreement. (Docket #19).

the Court will not enter any decision under seal, however, unless absolutely necessary.

Second, the plaintiff bases much of her opposition to the defendant's Motion for Summary Judgment on her argument that the documents upon which the defendant relies are not admissible because they "were not brought in through an affidavit." (Pl's Opp. at 1, Docket #35). As such, the plaintiff argues that the Court must ignore these documents in considering the motions at issue here.[2] The plaintiff does not argue that the documents are inaccurate in any way, but rather simply that they cannot be considered as filed due to their inadmissibility.

The Court finds this line of argument to be little more than a distraction from the merits of this case. The plaintiff's objection to the defendant's documents cites Rule 56(c)(2), which provides for objection to material "that cannot be presented in a form that would be admissible in evidence. Fed.R.Civ.P. 56(c)(2). The notes from the Rules Advisory Committee regarding the recent, substantial revisions to Rule 56 are helpful here: "The [subdivision (c)(2)] objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Rule 56, Advisory Committee Notes (2010).

The defendant argues in its reply brief the admissible form that is anticipated for these documents: (1) that the majority of them are admissible

---

[2] In response to nearly every one of the defendant's proposed findings of fact, the plaintiff states the following objection: "The documents referenced in this statement were not brought in through any affidavit or declaration, much less one that meets the requirements of Rule 56(3). The Court may not consider this statement as 'a court may only consider admissible evidence….'" (*See, e.g.,* Docket #38 at 2).

under the business records exception to the hearsay rule under Rule 803(6); and (2) that the remaining documents are letters from the plaintiff herself and admissible as statements by a party opponent under Rule 801(d)(2). Additionally, the defendant submitted declarations along with its reply brief to remove any doubt as to the admissibility of certain records.[3]

The Court finds no reason to ignore the defendant's submitted documents for purposes of this summary judgment. As articulated by the defendant, the documents are not materials "that cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). The plaintiff's objections to the documents are without merit and, therefore, the Court will consider them for purposes of the motions before it.

1.    FACTUAL BACKGROUND[4]

1.1    Edfinancial

Edfinancial Services is a student loan service provider headquartered in Knoxville, Tennessee. (Docket #1). As part of its obligations to the holders of loans, and pursuant to U.S. Department of Education legal requirements, Edfinancial must report payment history and other information to credit bureaus about the borrowers whose loans Edfinancial services. Plaintiff

---

[3] The plaintiff takes issue with timeliness of the defendant's filing. (Docket #44). However, as the defendant points out, Civil Local Rule 56(b)(3) allows for the filing of declarations submitted in reply.

[4] As previously discussed, the plaintiff's objections to the majority of defendant's proposed finding of fact are without merit. The Court notes that determining the undisputed facts was particularly difficult as a result of the plaintiff's failure to respond to the proposed finding of fact in light of the objections. Because the Court grants summary judgment based solely on the dispositive issue of the plaintiff's failure to show entitlement to any relief, the majority of the factual allegations of the parties are not cited here. Only those facts relevant to the questions of damages causation and willfulness are included to avoid any confusion.

Jennifer Matson has two student loans serviced by Edfinancial. (Declaration of Wanda Hall ("Hall Decl.") ¶ 3, Docket #31-1).

E-Oscar is a program used to communicate information between Edfinancial and the Consumer Reporting Agencies ("CRAs"). (Deposition of Wanda Hall ("W. Hall Dep.") at 21-22, Docket #28-1). Edfinancial created policy and procedural manuals to be used when responding to a dispute written by a consumer to a CRA about information on their credit report. (W. Hall Dep. at 25, Docket 28-1). Edfinancial uses the written policies and procedures to train employees on how to processes a consumer dispute related to information on the consumer's credit report. (W. Hall Dep. at 40, Docket #28-1). Edfinancial employees are to look at the specific letters and information provided by a consumer when they are processing a dispute related to information on a credit report. (W. Hall Dep. at 65, Docket #28-1).

1.2     The Plaintiff and Edfinancial

Beginning sometime around 2012,[5] Ms. Matson and her husband were eager to move out of Milwaukee because of concerns about crime in their neighborhood. (Deposition of Matthew Matson ("M. Matson Dep.") at 8, Docket #31-2). In February of 2014, the Matsons attempted to get a home loan, but Dana Starkey, a loan officer at Providence Home Lending, informed them that their credit scores were too low and that they had numerous items in collection by third-party debt collectors. (Deposition of Jennifer Matson, ("J. Matson Dep.") at 17, Docket #31-3). Ms. Starkey referred the Matsons to Credit Matters, a credit repair organization that could help get their credit scores up and qualify for a loan. (J. Matson Dep. at 22-23, Docket #31-3).

---

[5] The defendant claims instead that the year was 2011; however, this fact is immaterial to the issue at hand.

Since 2011, Edfinancial had been reporting to credit bureaus that the plaintiff was more than 90 days late in making a payment on her student loans. (W. Hall Decl. ¶ 4, Docket #31-1). In March and May 2014, the plaintiff lodged disputes with Equifax challenging the accuracy of Edfinancial's reporting. (Letter from J. Matson, Docket #31-6). As part of that process to improve her credit score, during the two-week period between July 11 and approximately July 25, 2014, Ms. Matson asked four different times for Edfinancial to stop reporting the consumer dispute statements to the credit bureaus. Three of these requests were made directly to Edfinancial (once by phone and twice by letter), and the other request was sent by way of a letter to Equifax. Only one of Ms. Matson's requests—the request made through Equifax—is being challenged in this lawsuit. (*See* Pl. Opp. at 5, Docket #35). As such, the Court will limit its factual discussion to this incident to avoid any confusion.

On July 14, 2014, Ms. Matson mailed a letter to Equifax asking that the dispute statement from Edfinancial be removed from the credit report. (Letter post-marked July 14, 2014, Docket #31-10). A credit report from Equifax dated July 24, 2014, continued to report a consumer dispute statement from Edfinancial. (Equifax Credit Report, Docket #31-15). On August 4, 2014, an Edfinancial employee in the credit reporting department, Amanda Blalock, conducted the investigation for Ms. Matson's request—the letter to Equifax dated June 27, 2014. The transmission from Equifax consisted of an Automated Consumer Dispute Verification ("ACDV") form, which contained the basic elements being reported by Edfinancial, as well as an attachment that was an image of the letter sent by Ms. Matson. (ACDV Form, Docket #31-15). Ms. Blalock took steps to make sure Ms. Matson's

letter was scanned and entered into their system. (Deposition of Amanda Blalock ("A. Blalock Dep.") at 35, Docket #31-16).

Ms. Blalock noticed a discrepancy between the information being reported by Edfinancial and the information contained on the ACDV, Ms. Matson's telephone number, and most likely assumed that was the basis of Ms. Matson's dispute. Ms. Blalock's response to the ACDV changed the phone number to the one Ms. Matson submitted in the ACDV. (A. Blalock Dep. at 35, Docket #31-16). Because she was changing information that Edfinancial was reporting in response to a consumer dispute, she also submitted an "XB," rather than an "XR," compliance condition code. (Blalock Dep. at 35, Docket #31-16). This code signified that the dispute statements would remain on Ms. Matson's credit report. (A. Blalock Dep. at 42, Docket #31-16).

Unfortunately, Ms. Blalock did not read Ms. Matson's letter attached to the ACDV, which asked Edfinancial to stop reporting the dispute statement. Upon reviewing the attachment to the ACDV after the fact, during the course of this lawsuit, Ms. Blalock realized that she must not have opened the attachment and read Ms. Matson's letter. Ms. Blalock concedes that she should have submitted the "XR" rather than the "XB" condition code. In her deposition, Ms. Blalock forthrightly admitted that she had made a mistake. (A. Blalock Dep. at 5, 42, Docket #31-16).

That mistake was rectified by Ms. Blalock herself, in response to a different request from Ms. Matson. On August 7, 2014, Edfinancial submitted an AUD with the XR compliance code, instructing Equifax (and the other credit bureaus) to remove the consumer dispute statements from Ms. Matson's accounts. (AUD dated Aug. 7, 2014, Docket #31-17).

Ms. Matson filed the Complaint in this case on August 28, 2014. (Docket #1). The Matsons sought pre-approval for a loan from Providence Lending in September 2014 when she and her husband identified a house they wanted to buy. Providence Lending does not issue generic pre-approval letters to customers, but only "issue[s] pre-approval letters when the client is ready to write an offer on a home." (D. Starkey Dep. at 38, Docket #31-4). Ms. Starkey provided a pre-approval letter to the Matsons on October 6, 2014, immediately before they made an offer to buy a house. The basis for the pre-approval was credit reports pulled by Ms. Starkey on September 23, 2014. (D. Starkey Dep. at 38, Docket #31-4).

The Matsons' offer in October 2014 was not accepted because the sellers said the offer price was too low. (J. Matson Dep. at 80, Docket #31-3 ). The Matsons did not make another offer on a house until November 2014, which was accepted. The Matsons closed on their new home on December 30, 2014.  (J. Matson Dep. at 80, Docket #31-3).

2.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

On summary judgment, courts must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). Additionally, "[o]n summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson,* 477 U.S. at 248.

3.    DISCUSSION

Before the Court are Cross-Motions for Summary Judgment. The plaintiff's motion argues that she is entitled to summary judgment on the issue of liability as to the negligence claim. The defendant's motion argues that: (1) the plaintiff cannot prove she suffered damages caused by the violation of the FCRA; (2) the plaintiff's evidence of emotional distress is insufficient as a matter of law to meet the "strict standard" established in the Seventh Circuit; and (3) no reasonable jury could find that its conduct rose

to the level of a willful violation. (Def's Opening Br., Docket #31 at 1). As discussed in detail below, the Court finds that: (1) the plaintiff fails to prove any actual damages caused by the alleged FCRA violation; and (2) no reasonable jury could find willful infringement on these facts. As such, the defendant's motion will be granted in full.

### 3.1 Plaintiff's Motion for Partial Summary Judgment

To begin, the Court easily disposes of the plaintiff's Motion for Partial Summary Judgment as its arguments are woefully undeveloped and in no way merit summary judgment on the issue of liability. Based on the plaintiff's opening brief, it is not even clear what claim the plaintiff seeks summary judgment for—not to mention that the brief includes no factual discussion to base its argument.

First, the plaintiff argues that "Ms. Matson has standing, because she filed a dispute with Equifax." (Pl's Opening Br., Docket #26 at 2). Neither the Court nor the defendant has challenged the plaintiff's standing in this instance. The Court fails to see the connection between a standing argument and why the Court should grant summary judgment in favor of the plaintiff. Standing will get you in the door to hear your case; it will not, however, resolve an issue of FRCA liability on summary judgment. This line of argument is thus irrelevant to the plaintiff's motion for summary judgment.

The remainder of the plaintiff's motion focuses on the defendant's alleged failure to conduct a reasonable investigation into the plaintiff's request to remove a dispute on her credit report. In the concluding paragraph, the plaintiff appears to argue that summary judgment on this issue is appropriate because the question of reasonableness here is beyond question. (Pl's Opening Br., Docket #26 at 7 (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) and *Crabill v. Trans Union*, L.L.C.,

Case 2:14-cv-01052-JPS   Filed 08/21/15   Page 9 of 18   Document 47

259 F.3d 662, 664 (7th Cir. 2001))). This argument is wholly unpersuasive for two reasons: (1) plaintiff's supporting cases are inapposite because they involve cases where the Seventh Circuit upheld summary judgment in favor of the defendants where no rational jury could find that defendants conducted an unreasonable investigation; and (2) plaintiff fails to articulate with *any* specificity why this case meets the "beyond question" standard it proposes. The plaintiff's conclusory arguments of the defendant's unreasonable actions do not come anywhere close to meriting summary judgment on this claim. As such, the Court must deny the plaintiff's Motion for Partial Summary Judgment.

Finally, the Court notes that the plaintiff's motion must also be denied because it fully ignores the questions of proximate cause and damages. As discussed in detail below, that is so because they are losing arguments.

### 3.2 Defendant's Motion for Summary Judgment

The plaintiff claims that Edfinancial violated the FCRA by failing to conduct a reasonable investigation of disputed information, i.e., the request she lodged through Equifax that Edfinancial stop reporting her dispute statement. (Complaint ¶ 15, Docket #1). She proceeds under the FCRA's private right of action for a negligent violation (15 U.S.C. § 1681o), which allows the plaintiff to recover actual damages, as well as the FCRA's private right of action for a willful violation (15 U.S.C. § 1681n), which allows the plaintiff to elect between actual and statutory damages, and also allows for punitive damages. (*See id.*).

The defendant argues that it is entitled to summary judgment because: (1) the plaintiff cannot prove she suffered damages caused by the violation of the FCRA; (2) the plaintiff's evidence of emotional distress is insufficient as a matter of law to meet the "strict standard" established in the Seventh

Circuit; and (3) no reasonable jury could find that its conduct rose to the level of a willful violation. (Def's Opening Br., Docket #31 at 1). The Court agrees with the defendant and, as discussed below, will grant their motion for summary judgment in its entirety.

### 3.2.1   Defendant's Duties Under the FCRA

The FCRA imposes a duty on credit reporting agencies to insure the accuracy of a consumer's credit report. This duty exists whenever a credit report is issued, 15 U.S.C. § 1681e(b), and whenever a consumer disputes an item in his or her credit report. 15 U.S.C. § 1681i(a). If a credit reporting agency negligently violates any duty imposed by the statute, a plaintiff may collect "actual damages," costs and fees. 15 U.S.C. § 1681o. If the violation is willful, statutory and punitive damages are available without proof of actual damages. 15 U.S.C. § 1681n.

For the purposes of this motion, the defendant does not argue that its actions were reasonable.[6] Instead, the defendant argues it cannot be liable, even if it were negligent, because the plaintiff cannot prove she suffered "actual damages." This line of argument is "risky but not entirely unconventional." *Konter v. CSC Credit Servs., Inc.,* 606 F. Supp. 2d 960, 967 (W.D. Wis. 2009). In addressing violations of § 1681i requiring consumer reporting agencies to reinvestigate the accuracy of a disputed credit report, the Court of Appeals for the Seventh Circuit has held that "[b]efore any discussion of the reasonableness of [a] reinvestigation is necessary,…[a plaintiff] must show that [she] 'suffered damages as a result of the inaccurate

---

[6] The Court notes that the plaintiff spends a great deal of time in her Opposition arguing the unreasonableness of the defendant's actions. The defendant clearly does not advance this argument in its motion for summary judgment. As such, the Court need not address that argument here because it is irrelevant and only clouds the issues.

information.'" *Ruffin–Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)); *see also Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004) ("It is the plaintiff's burden to establish that [s]he is entitled to damages.").

Even if a plaintiff cannot prove actual damages, she is not barred from recovering statutory or punitive damages if the defendant's violations are willful. 15 U.S.C. § 1681n. The Court now turns to discuss each type of alleged damages separately.

### 3.2.2 Plaintiff's Actual Damages

Plaintiff alleges that she suffered actual damages in the form of emotional distress and moving expenses associated with a winter move as a result of her inability to purchase a home in the summer of 2014. Damages are not presumed in an FCRA case, and a plaintiff bears the burden of showing "a causal relation between the violation of the statute and the loss of credit, or some other harm." *Crabill v. Trans Union*, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001). Damages for emotional distress are particularly scrutinized. *See Sarver*, 390 F.3d at 971 (noting that in FCRA cases, the Seventh Circuit has "maintained a strict standard for a finding of emotional damage because they are so easy to manufacture").

The Seventh Circuit's analysis in *Ruffin–Thompkins* is instructive on the question of causation. In *Ruffkin–Thompkins*, a consumer filed suit against a credit reporting agency, claiming that the agency's failure to promptly investigate her objections to information on her credit report harmed her by causing banks to deny credit. *Id.* at 606–07. The district court granted summary judgment and the Seventh Circuit affirmed, noting that the only denials of credit in the record occurred prior to the plaintiff's complaint about

information on her credit report. *Id.* at 609. The court, therefore, concluded that "even if [the plaintiff] could prove that [the defendant] violated a duty it owed to her under the FCRA, she cannot establish 'a causal relation between the violation of the statute and the loss of credit'" and had, therefore, failed to establish any damages. *Id.* at 610.

Similarly here, even if Edfinancial's actions constituted a negligent violation of the FCRA, there are no facts in the record from which a jury could conclude that this violation bore a causal relationship to any harm of which the plaintiff complains. The undisputed facts show that the plaintiff had her credit report pulled in June 2014, *prior* to Edfinancial's reinvestigation at issue here, and was unable to get pre-approved for a mortgage because of the consumer disputes on the report. (D. Starkey Dep. at 37, Docket #31-4). Ms. Starkey, the plaintiff's loan officer, did not obtain another credit report until September 23, 2014—*well after* Edfinancial removed the credit dispute—from which the plaintiff received pre-approval for a mortgage.

The plaintiff's argument here is confusing because it relies on hypothetical as opposed to actual facts. She argues that Ms. Starkey "only testified as to the reports that she obtained and is not able to testify as to any potential lenders that may have viewed Ms. Matson's credit report during that time frame." (Pl's Opening Br. at 4, Docket #42). While this is certainly true, it nonetheless remains the plaintiff's burden to show damages, and there is no evidence in the record of any other credit reports during this time period.

Even assuming Edfinancial's actions were unreasonable on August 4, 2014, by failing to properly address her letter, the undisputed facts show that this error was rectified three days later, on August 7, 2014, when Edfinancial

submitted an AUD with the XR compliance code, instructing Equifax (and the other credit bureaus) to remove the consumer dispute statements from Ms. Matson's accounts. (AUD dated Aug. 7, 2014, Docket #31-17).

The Court finds that no rational jury would find that this three-day window was a "substantial factor" in the plaintiff's alleged damages—the cost of moving in winter and emotional damages. *See Scheel-Baggs,* 575 F.Supp. 2d at 1043. Moreover, the undisputed facts show that the plaintiff's offer on a house in October was rejected because the price was too low—not because of anything in relation to the defendant. (J. Matson Dep. at 80, Docket #31-3 ). The plaintiff's allegation that she was forced to move in the winter and incur additional moving expenses, as a result of the defendant's actions, is nothing more than pure speculation. Similarly, the plaintiff's alleged emotional distress of not being able to move out of this dangerous neighborhood also fails to connect to this three-day window. Indeed, the plaintiff had been wanting to move out of the dangerous neighborhood since at least 2012. (*See* M. Matson Dep. at 8, Docket #31-2). The necessary causal connection between the alleged violation of the FCRA and the plaintiff's damages in this case is simply not present in this case.

Finally, the Court adds that the plaintiff's claims for emotional distress could not survive summary judgment as a matter of law even if she could prove a causal connection. Courts in the Seventh Circuit have "maintained a strict standard for a finding of emotional damage because they are so easy to manufacture." *Ruffin-Thompkins*, 422 F.3d at 609 (quoting *Sarver v. Experian Info. Solutions,* 390 F.3d 969, 971 (7th Cir. 2004)).

The plaintiff submits no evidence to support damages for emotional injury besides her own conclusory statements. The plaintiff has not sought medical treatment, counseling, or therapy, and is not taking any medication.

(J. Matson Dep. at 91, Docket #31-3). The plaintiff testified that as a result of being unable to move in the summer of 2014, she suffered distress from a fear that her children would be accidently shot in her neighborhood, due to the rising crime in the summer of 2014. When she found out that Edfinancial was not removing the dispute statement from her credit report, she suffered from some of the greatest emotional stress of her life. (J. Matson Dep. at 91, Docket #31-3 ).

Despite the plaintiff's insistence that a jury should decide whether Edfinancial's actions caused emotional distress, she simply does not raise any genuine issue of material fact on that point. *See Wantz*, 386 F.3d at 834 (finding that plaintiff's testimony that he was "humiliated and embarrassed" and that dealing with credit reporting agencies is "mentally and emotionally distressful" was "not one of the few cases in which the facts are so inherently degrading that a jury could infer the existence of emotional distress."). While the Court can certainly understand that this may indeed have been a stressful situation for the plaintiff, her conclusory statements alone do not meet the "strict standard" for emotional damages in this circuit.

In sum, the plaintiff has failed to meet her burden to prove that she suffered any actual damages as a result of the alleged violation of the FCRA. As such, the Court will grant the defendant's Motion for Summary Judgment as the claim for a negligent violation of the FCRA. The Court now turns to discuss the claim for a willful violation.

### 3.2.3  Willful Damages

The plaintiff asserts claims for willful as well as negligent violations of the Fair Credit Reporting Act. Section 1681n provides statutory damages of not less than $100 and not more than $1,000 when violations are willful. "To show willful noncompliance, a plaintiff must show that the defendant

'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *McKeown v. Sears Roebuck & Co.*, 335 F. Supp. 2d, 917, 939 (W.D. Wis. 2004). Willful violations of the Act include "intentional concealments or misrepresentations," *id.; accord Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001) ("Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments."); *Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir. 1993) (observing that early case law awarded punitive damages for acts of concealment and misrepresentation), and reckless violations. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 2215, 167 L.Ed.2d 1045 (2007) ("[A] company subject to [the Fair Credit Reporting Act] does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."); *see also Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725-26 (7th Cir. 2008).

The plaintiff alleges willfulness here because the defendant's failure to read her letter—which it was required to read by statute—"created an unjustifiably high risk that they would not understand the nature of the wrong information and therefore violate her rights under the FCRA." (Pl's Opp. at 9, Docket #35). The plaintiff argues, without any legal citation, that "[t]he question of willfulness is a jury question." (Pl's Opp. at 8, Docket #35). In light of various cases finding in fact the opposite, the plaintiff's argument is either disingenuous or inadequately researched—neither of which are satisfactory to this Court.

Certainly, the question of willfulness *may* be a jury question in some cases, *see, e.g., Scheel-Bagg v. Bank of Am.,* 575 F. Supp. 2d 1031, 1044 (W.D.

Wis. 2008), but it is hardly a foregone conclusion. *See, e.g., Dixon v. Green Tree Servicing, LLC,* No. 2:13-cv-227-PPS, 2015 WL 2227741, at *5 (N.D. Ind. May 11, 2015) (granting summary judgment for the defendant on willfulness claim for lack of evidence)*; Aleksic v. Clarity Servs., Inc.,* 1:13-cv-07802, 2015 WL 4139711, at *10-*11 (N.D. Ill. July 8, 2015) (same); *Konter v. CSC Credit Servs., Inc.,* 606 F. Supp. 2d 960. 971 (2009) (same).

The undisputed facts show that Edfinancial created policy and procedural manuals to be used when responding to a dispute written by a consumer to a CRA about information on their credit report. (W. Hall Dep at 25, Docket #28-1). Edfinancial uses the written policies and procedures to train employees on how to processes a consumer dispute related to information on the consumer's credit report. (W. Hall Dep at 40, Docket 28-1) Edfinancial's employee, Ms. Blalock, admits that she made a mistake in not reading the plaintiff's letter. (A. Blalock Dep. at 5, 42, Docket #31-16). At worst, this mistake was negligent; the plaintiff puts forth no facts to prove a conscious disregard, concealment or misrepresentation by defendant. As such, a reasonable jury could not find that defendant acted in willful noncompliance with the FRCA under § 1681n. Defendant's motion for summary judgment on plaintiff's claim for statutory and punitive damages will be granted.

4.   CONCLUSION

In sum, the Court finds that: (1) the plaintiff's Motion for Partial Summary Judgment will be denied; and (2) the defendant's Motion for Summary Judgment will be granted in full because the plaintiff cannot prove she suffered any actual damages  caused by the violation of the FCRA and no reasonable jury could find willful infringement on these facts.

Finally, the Court will deny the plaintiff's Motion to Reschedule the Final Pre-Trial (Docket #37) as moot in light of dismissal of this action in its entirety.

Accordingly,

IT IS ORDERED that the defendant's Motion for Summary Judgment (Docket #30) be and the same is hereby GRANTED in full, as more fully described in detail above, and this action be and the same is hereby DISMISSED;

IT IS FURTHER ORDERED that the plaintiff's Motion for Partial Summary Judgment (Docket #24) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the plaintiff's Motion to Restrict (Docket #25) and the defendant's Motion to Restrict (Docket #29) be and the same are hereby GRANTED; and

IT IS FURTHER ORDERED that the plaintiff's Unopposed Motion to Reschedule the Final Pre-Trial (Docket #37) be and the same is hereby DENIED as moot.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of August, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge