# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JENNIFER MATSON,

                Plaintiff,

v.

EDFINANCIAL SERVICES LLC,

                Defendant.

Case No. 14-CV-1052-JPS

# ORDER

In this civil suit, filed on August 28, 2014, Plaintiff, Jennifer Matson, alleged both negligent and willful violations of the Fair Credit Reporting Act ("FCRA") in violation of 15 U.S.C. § 1681, *et seq.*, against Defendant EdFinancial Services LLC ("Edfinancial").[1] (Docket #1). Accordingly, the plaintiff sought actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681b(a)(3)(A), 1681n(a), and 1681o(a)(1). (Docket #1 at 3-4).

On June 15, 2015, Ms. Matson filed a Motion for Partial Summary Judgment (Docket #24), and Edfinancial filed a Motion for Summary Judgment on all claims (Docket #30). The Court granted Edfinancial's motion—and denied Ms. Matson's—for three reasons. First, there were no facts in the record from which a reasonable jury could conclude that Edfinancial's three-day reporting error bore a causal relationship to any of

---

[1] On, January 8, 2015, the Court dismissed Defendant Equifax Information Services, LLC, upon a joint stipulation from the parties due to a settlement agreement. (Docket #19).

the harms (*i.e.*, actual damages) of which Ms. Matson complained.[2] (Docket #47 at 11-13). Second, Ms. Matson's claim of emotional distress could not survive as a matter of law under the Seventh Circuit's "strict standard." (Docket #47 at 14). Finally, because Ms. Matson presented no evidence to suggest intentional or reckless noncompliance with the FCRA, no reasonable jury could find that Edfinancial willfully violated 15 U.S.C. § 1681. (Docket #47). At bottom, therefore, Ms. Matson was not entitled to the relief she sought and, thus, her claims were dismissed in their entirety. (Docket #47).

Thereafter, Edfinancial brought a motion for attorney's fees pursuant to 28 U.S.C. § 1927. (Docket #50). The plaintiff opposes this motion. (Docket #55). The motion is now fully briefed and ripe for adjudication. As explained below, the Court will grant Edfinancial's motion for attorney's fees under Section 1927. However, the Court will order the parties to confer, and further brief if it becomes necessary, the issue of an appropriate award in accordance with the instructions herein.

1.     BACKGROUND[3]

The dispute underlying this case involved certain payment history reporting that Edfinancial—a student loan service provider—made during

---

[2]Ms. Matson's theory for actual damages was that Edfinancial's "false [reporting] information was an absolute bar to financing." (Docket #35 at 11). This bar to financing, according to Ms. Matson, delayed her ability to move until December of 2014. (Docket #35 at 11). During this time, Ms. Matson claimed that she suffered from emotional distress from having to live in an unsafe neighborhood for a longer period of time. (Docket #35 at 12-13). Thus, Ms. Matson's claim for actual damages related to both winter moving expenses and emotional distress. (Docket #35).

[3]The Court derives this condensed version of the factual background from the Court's summary judgment Order. (*See* Docket #47 at 3-7).

August of 2014 with regard to Ms. Matson's student loans. (Docket #47 at 3). Earlier that year, Ms. Matson became increasingly interested in improving her credit score because she wanted to purchase a new home. (Docket #47 at 3). At least one of Ms. Matson's motivations for moving was her concern about increased crime and the safety of her family within their then-current neighborhood. (Docket #47 at 15). Thus, with the goal of moving in mind, Ms. Matson employed the assistance of Dana Starkey, a loan officer at Providence Home Lending, to begin the loan approval process. (Docket #47 at 4). When certain issues with Ms. Matson's credit report surfaced in February of 2014, Ms. Starkey, in turn, referred Ms. Matson to Credit Matters, a credit repair organization that could allegedly help Ms. Matson and her husband raise their credit scores and qualify for a loan. (Docket #47 at 4).

Since 2011, Edfinancial had been reporting to credit bureaus that the plaintiff was more than 90 days late in making a payment on her student loans. (Docket #47 at 5). However, using certain forms provided to her from Credit Matters, during the two-week period between July 11 and approximately July 25, 2014, Ms. Matson submitted four requests to Edfinancial to stop reporting the consumer dispute statements to the credit bureaus.[4] (Docket #47 at 5). Only one of Ms. Matson's requests—a request she made through Equifax—was challenged in this lawsuit. (Docket #47 at 5).

Specifically, on July 14, 2014, Ms. Matson mailed a letter to Equifax asking that the dispute statement from Edfinancial be removed from her

---

[4]At least one of these requests was made telephonically. (Docket #31 at 4).

credit report.[5] (Docket #47 at 5). When Edfinancial received this letter,[6] it was processed by Amanda Blalock. (Docket #43 at 5-6). On August 4, 2014, Ms. Blalock conducted the investigation for Ms. Matson's request—the letter to Equifax dated June 27, 2014. Unfortunately, Ms. Blalock did not properly read Ms. Matson's letter, which asked Edfinancial to stop reporting the dispute statement. (Docket #43 at 6). Ms. Blalock admitted to having accidently submitted the wrong information into Edfinancial's reporting system, which meant that the dispute statements would remain on Ms. Matson's credit report. (Docket #43 at 6). However, that mistake was rectified by Ms. Blalock herself three days later, on August 7, 2014. (Docket #43 at 6).

Ms. Matson filed the Complaint in this case on August 28, 2014. (Docket #1). Shortly thereafter, on September 22, 2014, Edfinancial provided Ms. Matson with information regarding the three-day reporting error. (Docket #51 at 2). Edfinancial subsequently made a $1,500 settlement offer in at attempt to avoid litigation costs and fees and an offer of judgment for $501.00 pursuant to Federal Rule of Civil Procedure 68. (Docket #51 at 2-3). Ms. Matson rejected both offers. (Docket #51 at 2-3).

[5]Though this letter was dated June 27, 2014, the letter was allegedly sent and postmarked on July 14, 2014. (Docket #31 at 6 n.5).

[6]Ms. Matson's opposition to Edfinancial's motion for attorney's fees suggests that she views Edfinancial's reporting error as one that began on July 20, 2014. (Docket #55 at 3). She does not cite to the factual record in support of this assertion. The undisputed facts reveal, however, that Equifax had only transmitted Ms. Matson's dispute letter to Edfinancial on July 21, 2014. (Docket #27 ¶ 8). Thus, Edfinancial's duty to "reasonably" process Ms. Matson's dispute was triggered on July 21, 2014.

Despite Edfinancial's voluntary disclosure of the reporting error, the lawsuit continued, and Ms. Matson sought pre-approval for a loan from Providence Lending in September 2014. (Docket #43 at 7). Ms. Starkey provided a pre-approval letter to Ms. Matson on October 6, 2014, immediately before Ms. Matson and her husband made an offer to buy a house. (Docket #43 at 7). The basis for the pre-approval was a credit report pulled by Ms. Starkey on September 23, 2014. (Docket #43 at 7).

The Matsons' offer in October 2014 was not accepted because the sellers said the offer price was too low. (Docket #43 at 7). The couple did not make another offer on a house until November 2014, which was accepted. (Docket #43 at 7). The Matsons closed on their new home on December 30, 2014. (Docket #43 at 7).

Meanwhile, discovery in this case continued. The parties exchanged interrogatories and requests for documents. (Docket #51 at 7). Ms. Matson deposed Edfinancial's Fed. R. Civ. P. 30(b)(6) representative, Ms. Blalock, and Edfinancial deposed Ms. Matson, Mr. Matson, and Ms. Starkey. (Docket #51 at 7). In order to accommodate these depositions, the parties jointly requested an extension of the dispositive motion deadline. (Docket #21). The Court granted that request and postponed the cut-off date from June 1, 2015 to June 15, 2015. (Docket #22).

The parties took opposite approaches to summary judgment. On the one hand, Ms. Matson argued that she was entitled to judgment as a matter of law on the issue of *liability only*. (Docket #24, #26). In other words, Ms. Matson's motion for partial summary judgment focused exclusively on Edfinancial's allegedly negligent and wilful violations of the FCRA and did not even discuss damages, which, according to Ms. Matson, were issues to

be reserved for trial. (Docket #26 at 7). On the other hand, Edfinancial countered that it could not be liable for negligently violating the FCRA because: (1) its three-day reporting error did not cause any of the harms (*i.e.*, winter moving costs and emotional distress) of which Ms. Matson complained; and (2) any cognizable emotional damage suffered by Ms. Matson did not pass muster under the Seventh Circuit's "strict standard" test for emotional distress damages. (Docket #31 at 11-17). In addition, Edfinancial argued that Ms. Matson presented no facts to support her claim of a wilful violation of the FCRA. (Docket #31 at 17-19).

The Court agreed with Edfinancial. (Docket #47). With respect to actual damages, the undisputed facts showed that Ms. Starkey was the sole loan officer with whom Ms. Matson worked. (Docket #47 at 13). Ms. Starkey admitted that the only credit reports that she viewed while assisting Ms. Matson obtain a home loan were pulled in June of 2014—*before* the alleged FCRA violations occurred—and in September of 2014—*after* the alleged FCRA violations were remedied. (Docket #47 at 13). Thus, no rational jury could have concluded that Edfinancial's three-day error could have been a "substantial factor" affecting Ms. Matson's financing and/or emotional distress. (Docket #47 at 13-14). Moreover, the Court also agreed that: (1) Ms. Matson was not entitled to emotional distress damages as a matter of law; and (2) no reasonable jury could conclude that Ms. Blalock committed a willful violation of the FCRA when handling Ms. Matson's dispute. (Docket #47 at 15-17).

In its motion for attorney's fees, Edfinancial argues that Ms. Matson's pursuit of her FRCA claims was both "unreasonable and vexatious" and, thus, it is entitled to fees and costs pursuant to § 1927. (Docket #51). The

plaintiff opposes this motion. (Docket #55). The Court concludes that Edfinancial is indeed entitled to attorney's fees under § 1927, but, as explained more fully herein, asking for nearly $140,000.00 is a far cry from any potential award it may receive in this matter.

2.   LEGAL STANDARD

Section 1927 of Title 28 of the United States Code provides that "[a]ny attorney…who so multiplies the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees *reasonably* incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). "[T]he statute provides a discretionary sanction[7] [in the form of an award if attorney's fees] against attorneys who abuse the judicial process." *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006). By the plain terms of the statute, Edfinancial must show that Ms. Matson engaged in both unreasonable and vexatious conduct that multiplied this action.

The Seventh Circuit has interpreted "vexatiousness" under Section 1927 to require a showing of subjective or objective bad faith. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006); *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) (explaining that bad faith can be demonstrated by subjective evidence of malice, objective evidence of reckless conduct, or indifference to the law). "Subjective bad faith must be shown only if the conduct under consideration had an objectively colorable basis." *Dal Pozzo,*

---

[7] The case law discussing 18 U.S.C. § 1927 often references an award of attorney's fees pursuant to § 1927 as a "sanction." *See e.g.*, *Bender*, 436 F.3d at 751. The Court will likewise refer to those two terms interchangeably throughout.

463 F.3d at 614. "The standard for objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Id.*

"If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Id.* (internal citations omitted). In addition, "[a] court may impose sanctions [in the form of an award attorney's fees] under § 1927 where an attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice…or where a claim [is] without a plausible legal or factual basis and lacking in justification." *Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993) (internal citations omitted) (internal quotation marks omitted). In this vane, the Seventh Circuit has interpreted Section 1927 "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal citations omitted); *see e.g.*, *Claiborne v. Wisdom*, 414 F.3d 715, 720 (7th Cir. 2005) (upholding an award of attorney's fees based on the plaintiff's pursuit of a claim "without a factual basis"); *Harris v. Franklin-Williamson Human Servs., Inc.*, 97 F. Supp. 2d 892, 909 (S.D. Ill. 2000) (holding that an attorney's failure "to make a reasonable inquiry under the circumstances" and "conduct a reasonable investigation into the validity of its allegations before making Defendants defend" themselves merited an award of attorney's fees under § 1927).

3.    ANALYSIS

The crux of Edfinancial's motion is that Ms. Matson knew, or should have known, that her FRCA claims had no factual or legal support. (*See generally* Docket #51). Ms. Matson denies this assertion. (*See generally* Docket #55). For the sake of clarity, the Court will address the propriety of an award of attorney's fees with respect to Ms. Matson's claim for actual damages (*i.e.*, those damages flowing from a negligent violation of the FCRA) separately from the propriety of an award of attorney's fees with respect to her claim for punitive and statutory damages (*i.e.*, those damages flowing from a wilful violation of the FCRA).

3.1    Actual Damages for Negligently Violating the FCRA

Pursuant to her claim that Edfinancial negligently reinvestigated her credit dispute, Ms. Matson sought to recover: (1) winter moving expenses (on the theory that Edfinancial's actions prevented her from receiving a home loan at an earlier date); and (2) emotional distress damages (on theory that Ms. Matson suffered longer in a high crime neighborhood because she could not move). (Docket #1 at 4; #35 at 12). Edfinancial argues that it is entitled to attorney's fees under Section 1927 because Ms. Matson knew, or should have known, that Edfinancial's three-day reporting error did not affect Ms. Matson's ability to receive a home loan. (Docket #51). Ms. Matson counters that she "viewed this case as involving a much longer period of time, from the time that the Defendant incorrectly responded to the ACDV (July 20, 2014) to the time when Plaintiff was made aware that the issue had been resolved (September 22, 2014)." (Docket #55 at 3; *see also supra,* Part 1 n.6). Though discovery was ultimately necessary to make this conclusion, the Court concludes that Ms. Matson's claim for actual damages was without a

Case 2:14-cv-01052-JPS   Filed 02/01/16   Page 9 of 22   Document 62

plausible legal or factual basis and, thus, Edfinancial is entitled to certain attorneys fees under Section 1927. *See Jolly Grp., Ltd.*, 435 F.3d at 720.

"'Before any discussion of the reasonableness of [a] reinvestigation [pursuant to the FCRA] is necessary,…[a plaintiff] must show that [she] 'suffered damages as a result of the inaccurate information.'" *Ruffin–Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)). "It is the plaintiff's burden to establish that [s]he is entitled to damages." *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004). A plaintiff also bears the burden of showing "a causal relation between the violation of the statute and the loss of credit, or some other harm." *Crabill v. Trans Union*, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (concluding that "even if [the plaintiff] could prove that [the defendant] violated a duty it owed to her under the FCRA, she cannot establish 'a causal relation between the violation of the statute and the loss of credit' and had, therefore, failed to establish any damages") (internal citations omitted).

Against the backdrop of the Seventh Circuit's causation requirement under the FCRA, it becomes clear that Ms. Matson's pursuit of a claim for actual damages was done so both unreasonably and in bad faith. The causation issue in this case was straightforward. Discovery had revealed that as of July 14, 2014, Edfinancial continuously reported no consumer dispute statement of Ms. Matson's, with the sole exception being a three-day period in August of 2014. (Docket #32 ¶ 12). Moreover, Ms. Blalock's mistake in reporting Ms. Matson's dispute, which began on August 4, 2014, was corrected by Ms. Blalock herself only three days later, on August 7, 2014. (Docket #32 ¶ 12). The undisputed facts also showed that the only factor

affecting Ms. Matson's ability to receive financing for a home loan was her credit score, and no lender with whom Ms. Matson was working viewed her credit report from June 25, 2014 ,until September 23, 2014. (Docket #32 ¶ 19). Thus, Edfinancial's three-day reporting did not affect Ms. Matson's ability to receive financing. And, by extension, any theory that Edfinancial was responsible for the Matson's winter moving expenses and/or emotional distress was simply untenable under the facts.

Ms. Matson's theory in response to Edfinancial's motion for attorney's fees ignores applicable law and the undisputed facts. First, as a matter of law, Ms. Matson's argument frames Edfinancial's breach in a manner that is fundamentally inconsistent with the reinvestigation duty imposed by the FCRA. Essentially, Ms. Matson argues that Edfinancial's breach began on the date Ms. Blalock mishandled her dispute reinvestigation[8] and ended on the day Edfinancial informed Ms. Ms. Matson of the three-day reporting mistake. (Docket #55 at 3) ("Plaintiff views this case as involving…the time that the Defendant incorrectly responded to the ACDV (July 20, 2014) to the time when Plaintiff was made aware that the issue had been resolved (September 22, 2014)."). However, such a theory rests on the premise that Edfinancial continued to breach some duty imposed by the FCRA until September 22, 2014. There are two problems with that argument. First, "furnishers" like Edfinancial have no duty under the FCRA to notify or

---

[8]Again, Ms. Matson presents conflicting arguments on the point of when Edfinancial's *breach* began. (*See supra*, Part 1 n. 6). Even assuming Edfinancial's *duty* to reasonably process Ms. Matson's dispute began on the date it received her dispute—July 21, 2014—Ms. Matson presented no evidence that Ms. Blalock in any way improperly handled Ms. Matson's dispute prior to August 4, 2014, when she began to process the information contained therein. (Docket #43 at 5).

contact consumers regarding their reinvestigation efforts when responding to a credit reporting agency's dispute notice.[9] *See* 15 U.S.C § 1681s(2)(b).[10] Second, Ms. Matson's principle theory in support of her motion for partial summary judgment was that Edfinancial breached its duty under the FCRA

---

[9]Edfinancial did not address this argument head on. Rather, it tangentially suggested that any duty to notify Ms. Matson of its reinvestigation was satisfied by a letter that it sent to Ms. Matson on July 29, 2014, which notified Ms. Matson that her disputes were no longer being reported to credit reporting agencies. (Docket #38 at 5-7). However, Edfinancial fails to mention that this July 29, 2014 letter was sent in response to a different dispute letter which Ms. Matson sent directly to Edfinancial. (Docket #32 ¶ 8). Thus, Edfinancial's July 29, 2014 letter was unconnected to its subsequent reinvestigation of Ms. Matson's Equifax dispute letter, which was dated June 27, 2014.

[10]In relevant part, the FRCA provides:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) *report the results of the investigation to the consumer reporting agency;*
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1) (emphasis added).

by processing her dispute unreasonably, *i.e.*, by failing to properly *read* Ms. Matson's dispute properly. (Docket #26 at 5). Thus, it was not even clear in her motion for partial summary judgment that Ms. Matson was complaining of any negligent conduct that occurred after Ms. Blalock made (and then corrected) the reporting error on August 4, 2014. In sum, any argument that Edfinancial's negligent breach—assuming there indeed was a breach—of the FCRA lasted until September 22, 2014, was: (1) completely unsupported by law governing the duties of furnishers under the FRCA; and (2) waived to the extent she failed to raise it as summary judgment. *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived.").

Second, as a matter of fact, Ms. Matson presented no evidence to support her assertion that "the Plaintiff's loan officer relied on the incorrect (and post-dispute) credit report of the Plaintiff for the purpose of financing." (Docket #55 at 3; *see also* Docket #42 at 1) (arguing that Ms. Matson "was blocked from financing due to incorrect information on her credit report"). Ms. Matson presented no facts to rebut Edfinancial's position that the only credit reports that Ms. Starkey viewed with respect to Ms. Matson were retrieved *before* Ms. Matson lodged her dispute with Equifax and *after* Edfinancial remedied her dispute. (Docket #32 ¶ 12). Upon learning this information, it should have become clear to Ms. Matson that Edfinancial's reporting mistake did not cause Ms. Matson any harm *unless* there were some other lender(s) that looked at her credit score sometime during the three-day window in which Edfinancial committed a reporting error.

This was, in theory, the approach Ms. Matson took at summary judgment. (Docket #42 at 3). Ms. Matson argued at summary judgment that there *could* have been other lenders viewing Ms. Matson's credit during the alleged violation and, on that basis alone, Edfinancial should be held liable for causing actual damages. (*See* Docket #42 at 3) (arguing that Ms. Starkey was "not able to testify as to any other potential lenders that *may* have viewed Ms. Matson's credit report during that time frame") (emphasis added). The critical failing of this argument was that Ms. Matson's discovery had not substantiated the possibility that another lender looked at Ms. Matson's credit in August of 2014. Ms. Matson's suggestion of such a woefully underdeveloped and factually unsupported theory at summary judgment demonstrated, at best, reckless indifference to law and facts of the case. *See Dal Pozzo,* 463 F.3d at 614.

Third, Ms. Matson's perfunctory claims that the "issue of damages" should be reserved "for a jury trial" completely side-stepped binding precedent. *Ruffin-Thompkins*, 422 F.3d at 610 (explaining that in the context of an FCRA action the plaintiff "must show that she suffered damages as a result of the inaccurate information" because "[t]he FCRA does not presume damages; instead, as discussed above, the consumer must affirmatively prove that she is entitled to damages.") (internal citations omitted).

In many respects, this case parallels the conduct described in *Lancaster v. Trans Union, LLC*, 2011 WL 3610051, at *1 (N.D. Ill. 2011). In that case, the defendant likewise argued that an award of attorney's fees was appropriate because "it should have been clear to plaintiff's counsel from the outset that the case was frivolous in that there was no evidence of causation or damages." *Id.* The plaintiff in *Lancaster* had originally claimed that she was

entitled: (1) to out of pocket expenses associated with disputing her credit score; (2) actual damages related to dealing with a decreased credit score (which, in turn, resulted in higher interest rates for a car loan); and (3) emotional distress damages. *Id.* However, the court found that attorneys fees under § 1927 was appropriate because counsel did not have an "objectively colorable" basis from which to pursue the plaintiff's FCRA claims. *Id.* at *2. The plaintiff had presented "entirely speculative" and unsupported arguments to support her theory that the defendant's actions caused any recoverable, actual damage. *Id.* To make matters worse, it did "not appear that plaintiff's attorneys conducted any pre-filing investigation" regarding the legitimacy of the plaintiff's damages. *Id.* at *4.

Like the plaintiff in *Lancaster*, it should have ultimately became clear to Ms. Matson that there was no factual or legal basis upon which to proceed with a claim for actual damages against Edfinancial. As described at length above, the evidence relied on by Ms. Matson at summary judgment conclusively showed that Ms. Starkey had not based any decision to deny Ms. Matson a home loan based on Edfinancial's reporting mistake. Any evidence to the contrary was entirely speculative and unsupported.

However, unlike the plaintiff in *Lancaster*, the evidence before the Court suggests that Ms. Matson's attorneys did conduct at least some pre-filing investigation to legitimize their pursuit of discovery. In particular, the email exchange between Ms. Starkey and Ms. Matson's attorneys indicates that Ms. Matson had indeed informed her attorneys with whom she was working to obtain a home loan. (Docket #56, Ex. 1). And, Ms. Starkey represented to Ms. Matson's lawyers that, as of September of 2014, credit disputes were preventing Ms. Matson from receiving a loan approval. *Cf.*

*Lancaster*, 2011 WL 3610051, at *3 ("Plaintiff admitted at her deposition that the lender did not give her an explanation of the interest rate that she received and did not refer to the Discover account and that she did not know whether the lender even reviewed her Trans Union credit report.").

Despite Edfinancial's voluntary disclosure of documents showing its three-day error, Ms. Matson had a reasonable basis to conduct discovery in order to determine how and whether Edfinancial's error had, or continued, to affect Ms. Matson's credit report. Specifically, the Court believes it was reasonable for Ms. Matson's attorneys to discover facts with respect to: (1) when Ms. Starkey viewed Ms. Matson's credit report; (2) what the credit reports that Ms. Starkey viewed had indicated; (3) whether any other lender had viewed Ms. Matson's report during August of 2014; and (4) assuming some other lender had viewed Ms. Matson's credit report, what those credit reports revealed. For this reason, the Court concludes that the parties' discovery was indeed appropriate in this case and will not award any attorney's fees derived from the discovery process.[11]

As discussed at length in the preceding paragraphs, after discovery ended, Ms. Matson knew or should have known that her theory that

---

[11]Ms. Matson also opposes Edfinancial's motion for attorney's fees on the grounds that Edfinancial did not "limit their exposure" by, for example, filing a dispositive motion at an earlier date. (Docket #55 2-3). This argument is frivolous. Based on the complaint alone, filing a motion to dismiss or judgment on the pleadings was inappropriate. *See* Fed. R. Civ. Pro. 12(b)-(c). Moreover, discovery was necessary to determine: (1) whether and when Edfinancial's error had ultimately stopped appearing on Ms. Matson's credit report; (2) which lenders were viewing Ms. Matson's report; and (3) what those lenders' credit report revealed with respect to Edfinancial's reporting. In pursuit of this information, the parties in this case did not finish taking depositions in this case until May of 2014 . (Docket #22). Thus, the argument that Edfinancial had the duty, or legal basis, from which to file an earlier dispositive motion is meritless.

Edfinancial caused her actual damage was speculative and unsupported by the facts. Thus, by failing to dismiss upon learning that her claim was: (1) factually baseless; and (2) rested on a theory that was legally meritless, Ms. Matson acted both unreasonably and in bad faith.[12] *Jolly Grp., Ltd.*, 435 F.3d at 720. As such, reasonable attorney's fees that were incurred following discovery—*i.e.*, litigation costs and those reasonable and necessary attorney's fees associated with the parties' motions for summary judgment, pretrial preparations, and/or the motion for attorney's fees—will be awarded to Edfinancial. The manner in which the Court will address the amount of a reasonable and necessary award will be described in further detail below. (*See infra*, Part 3.3).

3.2    Statutory and Punitive Damages for Wilfully Violating the FCRA

Ms. Matson not only pursued a claim for actual damages, however; she also pursued a claim for statutory and punitive damages in light of Edfinancial's allegedly wilful violation of the FCRA. (Docket #1 at 4). Edfinancial devotes nearly the entirety of its briefs in support of an award of attorney's fees to issue of causation and actual damages. (*See* Docket #51 at 5-7; #59 at 1-4). However, the Court stands by its conclusion at summary judgment: that, at worst, Edfinancial's three-day reporting mistake was negligent. (Docket #47 at 17). Because Ms. Matson pursued a factually

---

[12]At summary judgment, Edfinancial also argued that Ms. Matson failed to present sufficient evidence of emotional distress to meet the Seventh Circuit's standard for those damages. (Docket #31 at 15-17). However, because Ms. Matson recklessly continued to litigate this action in the face of disputed facts showing that Edfinancial's error did not cause *any* of the harms of which she complained—including emotional damage—the Court need not address that additional basis for recovery.

supported wilfulness claim in reckless disregard of the case law governing the FCRA, Edfinancial is also entitled to attorney's fees with respect to this claim. *Burda*, 2 F.3d at 777.

Section 1681n provides statutory damages of not less than $100 and not more than $1,000 when violations are willful. "To show willful noncompliance, a plaintiff must show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *McKeown v. Sears Roebuck & Co.*, 335 F. Supp. 2d, 917, 939 (W.D. Wis. 2004). Willful violations of the Act include "intentional concealments or misrepresentations," *id.*; *accord Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001) ("Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments."); *Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir. 1993) (observing that early case law awarded punitive damages for acts of concealment and misrepresentation), and reckless violations. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ("[A] company subject to [the Fair Credit Reporting Act] does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."); *see also Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725-26 (7th Cir. 2008).

Ms. Matson put forth no facts to prove that Edfinancial acted with conscious disregard, concealed, or misrepresented information during its reinvestigation of Ms. Matson's dispute. The only potential error that Edfinancial committed was that Ms. Blalock accidentally misreported Ms. Matson's dispute for a period of three days—a mistake that Ms. Blalock

Case 2:14-cv-01052-JPS   Filed 02/01/16   Page 18 of 22   Document 62

admittedly made after failing to read an attachment to Ms. Matson's dispute,[13] and then corrected, shortly thereafter. (Docket #47 at 17). Moreover, Ms. Matson presented no evidence to rebut Edfinancial's assertion that Edfinancial created policy and procedural manuals to be used when responding to a dispute written by a consumer to a CRA about information on their credit report. (Docket #47 at 4). Edfinancial uses those policies and procedures to train employees on how to processes a consumer dispute related to information on the consumer's credit report. Docket # 47 at 4).

Ms. Matson cannot hide behind its blanket assertion that the question of wilfulness is one for jury in blatant disregard for the dearth of evidence found during discovery. (*See* Docket #35 at 8; *see also* Docket #47 at 17-18) ("Certainly, the question of willfulness may be a jury question in some cases, *see, e.g.*, *Scheel-Bagg v. Bank of Am.*, 575 F. Supp. 2d 1031, 1044 (W.D. Wis. 2008), but it is hardly a foregone conclusion. *See, e.g.*, *Dixon v. Green Tree Servicing, LLC*, No. 2:13-cv-227-PPS, 2015 WL 2227741, at *5 (N.D. Ind. May 11, 2015) (granting summary judgment for the defendant on willfulness claim for lack of evidence); *Aleksic v. Clarity Servs., Inc.*, 1:13-cv-07802, 2015 WL 4139711, at *10-*11 (N.D. Ill. July 8, 2015) (same); *Konter v. CSC Credit Servs., Inc.*, 606 F. Supp. 2d 960. 971 (2009) (same)).

Because Ms. Matson continued to litigate her wilfulness claim without any supporting factual basis through summary judgment, the Court will

---

[13]Ms. Blalock explained that she noticed a discrepancy between the information being reported by Edfinancial and the information contained on the ACDV, Ms.Matson's telephone number, and most likely assumed that was the basis of Ms. Matson's dispute. (Docket #47 at 6). Thus, Ms. Blalock's response to the ACDV changed the phone number instead of correcting the dispute as requested in Ms. Matson's attached letter. (Docket #47 at 6).

likewise award attorney's fees to Edfinancial pursuant to Ms. Matson's pursuit of willful noncompliance with the FRCA under § 1681n.

### 3.3 An Appropriate Damage Award

"The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). The starting point for this calculation is what is commonly referred to as the "lodestar": "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Under this approach, the party seeking attorney's fees must provide adequate documentation to prove that the amount of hours they worked, and the rate at which they billed, were indeed reasonable and necessary to the claims at issue. *Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 683 (N.D. Ill. 2012). "Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Courts have "an obligation to exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Estate of Enoch ex rel. Enoch*, 570 F.3d at 823. (internal citations omitted) (internal quotation marks omitted). This is because the Court must ultimately "determine which of a party's legal costs are the direct result of sanctionable conduct." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1031 (7th Cir. 1999).

In light of the Court's conclusion that Edfinancial is entitled to attorney's fees pursuant to § 1927, the Court finds it appropriate to order further briefing on the issue of an appropriate award in this case. To clarify,

Edfinancial is entitled to reasonable and necessary attorney's fees and litigation costs that accrued following the completion of discovery—*i.e.*, those incurred in connection with the parties' motions for summary judgment, pretrial preparations, and/or the motion for attorney's fees. The parties must confer as to what they jointly find to be an appropriate award and file a report with the Court reflecting that figure on or before February 26, 2016. If the parties cannot determine a mutually satisfactory award, the parties are directed to brief the issue of attorney's fees as follows: Edfinancial is to file an opening brief on or before February 26, 2016; Ms. Matson's response will be due 21 days after Edfinancial's opening brief is filed; and Edfinancial's reply will be due 14 days after Ms. Matson's response is filed.

The Court reiterates that it is Edfinancial's burden to establish the reasonableness of any award. *Spegon*, 175 F.3d at 550. To the extent Edfinancial does not meet that burden and/or fails to demonstrate its entitlement to attorneys fees with appropriate documentary evidence, the Court is prepared to deny Edfinancial an award pursuant to § 1927.

4.    CONCLUSION

Ms. Matson acted unreasonably and vexatiously in pursuing her claims under the FCRA against Edfinancial. Ms. Matson's argued untenable positions with respect to the law governing this dispute and ignored undisputed facts showing that Ms. Matson was not entitled to the damages that she sought. Thus, Edfinancial's motion for attorney's fees (Docket #50) will be granted.

Accordingly,

IT IS ORDERED that the defendants' Motion for Attorney's Fees (Docket #50) be and the same is hereby GRANTED. The parties shall confer as to what they might jointly find an appropriate award of attorney's fees and file a report with the Court reflecting that figure on or before February 26, 2016. If the parties cannot determine a mutually satisfactory award, the parties are directed to brief the issue of attorney's fees as follows: Edfinancial is to file an opening brief on or before February 26, 2016; Ms. Matson's response will be due twenty-one (21) days after Edfinancial's opening brief is filed; and Edfinancial's reply will be due fourteen (14) days after Ms. Matson's response is filed.

Dated at Milwaukee, Wisconsin, this 1st day of February, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge